IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| WENDY L. TISDALE | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 6:21-cv-6315 |
| | ) | |
| NATIONAL AMBULANCE & OXYGEN SERVICE, INC., D/B/A AMERICAN MEDICAL RESPONSE | ) ) ) | COMPLAINT JURY TRIAL DEMAND |
| | ) | |
| Defendant. | ) | |

## NATURE OF THE ACTION

On behalf of Plaintiff Wendy L. Tisdale (referred to hereinafter as "Plaintiff" or "Wendy Tisdale") for her complaint against NATIONAL AMBULANCE & OXYGEN SERVICE, INC., D/B/A AMERICAN MEDICAL RESPONSE (referred to hereinafter as "Defendant" or "Employer" or "AMR") states and alleges as follows:

**Jurisdiction and Venue**

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq. ("Title VII") as well as pursuant to Title I of the Americans with Disabilities Act of 1990 ("ADA") in order to correct unlawful employment practices on the basis of Disability and to provide appropriate relief to an employee who was adversely affected by such practices.

1

2. This Court has original jurisdiction over this action, and each count, pursuant to 29 U.S.C. § 2617 and 28 U.S.C. § 1331.

3. Venue of this action in the United States District Court for the Western District of New York is proper pursuant to 28 U.S.C. § 1391(b) because the Plaintiff was employed and subjected to unlawful discrimination and retaliation by Defendant in Monroe County, New York area, within the Western District of New York, and a substantial part of the events giving rise to these claims, occurred in said locale.

4. All conditions precedent to the filing of this lawsuit have been met. Plaintiff timely filed Complaints with the New York State Division of Human Rights ("NYSDHR"), including NYSDHR Case number 10208693 and 10207623, each of which were dual-filed with the United States Equal Employment Opportunity Commission ("EEOC") under Federal Charge Numbers 16GC003495 and 16GC002680 respectively.

5. Subsequently, Plaintiff was issued two "Right To Sue" letters by the EEOC, both of which were received by Plaintiff fewer than 90 days from the date hereof (see both Right To Sue Letters, Attached collectively hereto as Exhibit "**A**") and Plaintiff files the instant Complaint within 90 days from her receipt of the earlier "Right To Sue Letter" dated January 14, 2021.

6. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of New York, where Plaintiff was employed by AMR at all relevant times hereto.

7. The employment practices complained of herein, including racial discrimination, hostile work environment and retaliation were intentional and malicious in nature.

## PARTIES

8. Plaintiff, Wendy Tisdale, a resident of Rochester, New York in Monroe County, was at all relevant times hereto, an employee of Defendant where she was employed as a Dispatcher for Defendant AMR from August 16, 1993 until her termination from employment effective July 22, 2020.

9. Defendant NATIONAL AMBULANCE & OXYGEN SERVICE, INC., D/B/A AMERICAN MEDICAL RESPONSE, employed Plaintiff at times relevant to this Complaint in Monroe County, New York, and is a Domestic Business Corporation in New York State.

10. Defendant has continuously had at least 15 or more employees and is an ambulance transportation service in Monroe County and elsewhere in the State.

11. The Defendant, upon information and belief, has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

## STATEMENT OF CLAIMS

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

13. Plaintiff was employed as a Dispatcher for Defendant AMR at all relevant times hereto.

14. Plaintiff was discriminated against in the workplace on the basis of her race – African American.

15. More specifically, on or about February 5, 2020, a Caucasian Supervisor named Zachary Larabie ,who worked during Plaintiff's shift, treated her in a demeaning and belittling fashion when he second-guessed a decision she had made during work respecting whether and

3

how an ambulance crew should clean its ambulance given the frigid temperatures.

16. Said Supervisor did not second-guess like decisions made by Caucasian dispatchers.

17. Mr. Larabie, upon information and belief, spoke over Ms. Tisdale, and publicly treated her as someone not to be trusted in the workplace.

18. Prior to the February 5th incident, Mr. Larabie had disciplined Plaintiff Wendy Tisdale for her manner of speaking when she merely conveyed to another dispatcher that an ambulance dispatcher must be courageous in their line of work.

19. Caucasian dispatchers have not been disciplined despite having spoken to colleagues in a much more inappropriate way, in a manner that strongly infers Defendant's racially discriminatory animus against Wendy Tisdale due to her race – African American.

20. On the evening in question: February 5th, 2020, Larabie relayed to the inquiring ambulance crew the same direction that Plaintiff gave the crew, to wit, that it was advisable to wash the interior of the ambulance but that it was too cold to wash the exterior.

21. Supervisor Larabie did the foregoing in a manner that inherently questioned the decision-making ability of Plaintiff in a public manner, over the intercom system so as to ridicule an African American employee among her peers.

22. Mr. Larabie continued all night long with the same ridiculing behavior.

23. When crews would come to a window through which to communicate to Plaintiff a question, Larabie attempted to one-up Plaintiff Wendy Tisdale by answering their questions before Plaintiff could, as though he were racing to see who could get the crew the answer first.

24. Plaintiff was attempting to do her job, but was being actively interfered with by the same Supervisor who had caused her to be disciplined frivolously, leading Plaintiff to believe

4

that Larabie had it out for Plaintiff.

25. Plaintiff had experienced racial discrimination on the job on many occasions, usually in the form of frivolous discipline meted out against other African American employees, and as of February 5, 2020, Plaintiff was the ONLY African American female left in the office.

26. Plaintiff had reason to be on guard for her career given the lack of diversity, and even worse than that, that any previous Black employees, none of whom were employed by AMR any longer, had also been discriminated against.

27. Plaintiff felt as though she was labeled by her Caucasian Supervisors as being argumentative, insubordinate, and hostile/aggressive, all of which Plaintiff found to be part of a negative albeit all-too common stereotype of Black women in America.

28. Black women are often misconstrued as hostile when in fact nothing could be further from the truth, and in the instant case, Plaintiff comported herself at all times hereto with diplomacy, civility and comradery.

29. Larabie was a Caucasian Supervisor who was engaged in a power struggle with Plaintiff so as to "put her in her place" because she happened to exhibit a strong personality as an African American female.

30. The power struggle just described was not limited to February 5, 2020, but to that period of time generally, and Plaintiff found this conduct to be pervasive, outrageous, unwelcome and extremely insulting, not only in a generic sense, but racially insulting as well.

31. Indeed, Plaintiff was once disciplined during which Defendant referred to Plaintiff as "aggressive", another example of the all-too common negative stereotype affecting Black employees in America.

32. On the night in question, Mr. Larabie talked over Plaintiff all night long and

continued with the harassing conduct described herein-above, not allowing her to do her job of responding to and aiding the crews/employees at the window.

33. Defendant failed to adequately intervene to protect Plaintiff from the discrimination described herein-above, and actively condoned it.

34. When Plaintiff attempted to seek the intervention of higher ups, a Mr. Perez, to whom Plaintiff had relayed the nature of the hostile work environment described above, immediately rebuffed her, telling her he did not have responsibility for the communication center.

35. Plaintiff complained at length to Mr. Perez about Mr. Larabie's conduct, to no avail.

36. Plaintiff had gone to Perez to complain because she had previously been placed on a Performance Improvement Plan ("PIP") due to Larabie's sabotaging of her in the workplace, and Plaintiff did not want to be disciplined again, this time for speaking out about the hostile work environment she experienced the night of February 5, 2020.

37. Plaintiff sought out Mr. Perez because she had previously been directed to seek such intervention, in said manner, if Supervisors assigned to the Communications Center were not available.

38. Mr. Perez was a higher-ranking supervisor that night, so Plaintiff felt that he had the ability to handle the situation.

39. Despite being blown off, Plaintiff continued to express her concerns about Mr. Larabie's behavior towards her.

40. During Plaintiff's conversation another Supervisor, Mr. Council, Plaintiff earnestly expressed her concern to him about the hostile work environment only to have Council

6

falsely respond that he lacked control over Larabie's conduct, despite that Larabie and the Communications Center was within Council's control and supervision.

41. Notably, during that same time period of February, 2020, Mr. Council admitted to Plaintiff that she was looked at in a negative light by all the upper management and they all believed that she posed a problem.

42. Council opined that Plaintiff was treated so dismissively by Management as a result of the disdain Management had for her.

43. Council told Plaintiff in meetings with Human Resources during PIP conferences that she needed to change because management level personnel believed her to be problem due to the way in which she tended to stand up for herself.

44. Notwithstanding that many similarly situated Caucasian employees of AMR also exhibit self-confidence and tended to stand up for themselves, AMR Management did not subject said Caucasian counterparts to discipline or a hostile work environment as a result.

45. Council admitted to Plaintiff during a conversation that members of the management team avoided having conversations with Plaintiff due to their perception of Ms. Tisdale as a strong woman.

46. Despite the willful ignoring of Plaintiff, Management seemed to be quick to discipline Plaintiff when it could.

47. Plaintiff filed her first Division of Human Rights complaint on April 16, 2020 and was then terminated on July 22, 2020, after which she filed her second NYSDHR Complaint on July 31, 2020 on the basis of disability discrimination and retaliation.

48. Notably, there exists temporal proximity as between Plaintiff's lawfully opposing racial discrimination in April of 2020 and her termination from employment on July 22, 2020,

7

during the pendency of her first DHR Complaint, this strongly inferring a causal nexus between her protected act and her adverse employment action – termination from her career that spanned decades.

49. As regards to her claim of disability discrimination, on May 25, 2020, Rich Garrett, Plaintiff's superior, sent Plaintiff home from work early.

50. Plaintiff is and was at that time, a diabetic, and on May 25th, Garrett had asked to speak to Plaintiff about an issue, to which Plaintiff responded that she was indeed willing to speak with him but needed a few minutes to take a breather and also that she needed to eat so that she could take her diabetes medication on a full stomach.

51. Garrett insisted that Plaintiff speak to him at that moment, and refused her the opportunity to eat even though she invoked her diabetes as the reason she needed to eat before the impromptu meeting he had called.

52. Plaintiff repeated her request for accommodation, to eat and to take a brief break before meeting with him, but Garrett refused the request even though it was not remotely burdensome on Garrett to have waited a few minutes.

53. When Plaintiff persisted in her accommodation request, Garrett instructed Plaintiff to clock out and to leave the premises.

54. Diabetes – Plaintiff's diagnosis - is a qualified disability about which Defendant was well aware, but it nevertheless chose to ignore Plaintiff's request.

55. A few days later, Defendant fired Plaintiff from her longstanding employment without adequate legal justification.

56. Given the plight of previous Black employees at AMR, and discrimination they endured at AMR, Plaintiff was not surprised by Defendant's actions, but it sent her life into a

tailspin; leaving her unemployed during a global pandemic without any basis to legitimately do so.

57. Any performance-related basis Defendant AMR used to justify her termination was pure pretext, and as one of the last remaining Black employees of AMR, who always did her job satisfactorily (she was not perfect, but neither were her colleagues) Plaintiff deserved better.

58. The foregoing disparate treatment had a discriminatory effect for which Plaintiff is entitled to relief.

59. The foregoing harassment, racial and disability discrimination and retaliation caused significant emotional distress to Plaintiff for which she is entitled to relief.

60. Plaintiff suffered severe emotional distress as a direct and proximate cause of her termination from employment, as well as from the conditions which caused it, for which she is entitled to relief in an amount to be proven at or before trial, which amount exceeds the jurisdictional minimum amount required to be in controversy in the present court.

61. Plaintiff suffered actual monetary damages in the form of lost wages following her termination from employment for which she is entitled to relief.

62. Notwithstanding that Plaintiff has satisfied her duty to mitigate her damages by exercising a good faith effort to mitigate, those damages continue to accrue.

63. Plaintiff's costs, including include attorneys' fees continue to accrue.

64. The present Complaint shall have been filed in the Federal District Court, Western District of New York, fewer than 90 days after receiving the Right To Sue letter from the Equal Employment Opportunity Commission.

65. Plaintiff hereby incorporates by reference each and every allegation and averment made above as though fully set forth herein.

66.     As a direct and proximate result of Defendant's discrimination, harassment and retaliation against Plaintiff, Plaintiff has suffered damages in an amount to be determined at trial, including, but not limited to, the loss of her career at AMR, lost wages, lost training, lost promotion opportunities, related fringe benefits, and other forms of compensation, as well as loss of career opportunity and advancement, in amounts yet to be determined at or before trial.

**Count I. Racial Discrimination in violation of Title VII of the Civil Rights Act of 1964.**

Defendant discriminated against Plaintiff in employment on the basis of her race in violation of Title VII of the Civil Rights Act of 1964.

**Count II. Racial Discrimination in violation of NYS Human Rights Law.**

Defendant discriminated against Plaintiff in employment on the basis of her race in violation of N.Y. Exec. Law, art. 15 (Human Rights law).

**Counts III & IV:     Disability Discrimination - Title I of the Americans with Disabilities Act of 1990 ("ADA") and N.Y. Exec. Law, art. 15 (New York State Human Rights Law).**

Defendant discriminated against Plaintiff in employment on the basis of her disability in violation of N.Y. Exec. Law, art. 15 (Human Rights law) as well as the ADA.

**Count V & VI. & VII Hostile Work Environment in Violation of NYS Human Rights Law, ADA and Title VII of the Civil Rights Act of 1964.**

Defendant created a hostile work environment in violation of N.Y. Exec. Law, art. 15 (Human Rights law), Title VII of the Civil Rights Act of 1964 and the ADA when it condoned pervasive and outrageous harassment in the workplace based on Plaintiff's race and disability, for which Plaintiff is entitled to monetary relief.

**Count VIII. Retaliation in violation of NYS Human Rights Law.**

Defendant retaliated unlawfully against Plaintiff in violation of N.Y. Exec. Law, art. 15 (Human Rights law) when it fired Plaintiff for opposing racial discrimination and harassment in the workplace for which Plaintiff is entitled to monetary relief.

**Count IX. Retaliation in violation of Title VII of the Civil Rights Act of 1964.**

Defendant retaliated unlawfully against Plaintiff in violation of Title VII of the Civil Rights Act of 1964 when it fired Plaintiff for opposing racial discrimination and harassment in the workplace for which Plaintiff is entitled to monetary relief.

## PRAYER FOR RELIEF

**Wherefore**, the Plaintiff respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from mistreating, or terminating qualified individuals from employment, discriminating or retaliating against employees due to race, disability or from retaliation due to filing complaints about discrimination.

B. Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities to all employees, and which protect employees from unlawful discrimination on the basis of race, disability and retaliation.

C. Order Defendant Employer to make whole Wendy Tisdale by providing appropriate back pay, with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D. Order Defendant Employer to make whole Wendy Tisdale by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described herein-above, in amounts to be determined at trial.

E. Order Defendant Employer to make whole Wendy Tisdale by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices, including the discrimination complained of herein-above, which caused emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F. Order Defendant Employer to pay punitive damages so as to punish Defendant for its malicious and intentional acts as outlined in the foregoing Complaint.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMAND

The Plaintiff requests a jury trial on all questions of fact raised by its complaint.

Respectfully Submitted,

S:// James D. Hartt
**JAMES D. HARTT, ESQ.,**
**Attorney For Plaintiff-Admitted to**
**Practice in NDNY Federal Court**
**6 North Main Street, Suite 200-F**
**Fairport, NY 14450**
**Telephone: (585) 490-7100**
 **Fax: 1 (716) 299-2006**

ORIGINAL of the foregoing was
filed this 14th Day of April, 2021 with:
The Clerk of the Federal District Court
Western District New York District